# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DILIP DANIEL, | CIVIL ACTION NO: |
| Plaintiff, | |
| v. | |
| CHRISTIANA CARE HEALTH SYSTEM, INC. | |
| Defendant. | |

## COMPLAINT AND JURY DEMAND

### I. PRELIMINARY STATEMENT

1. This is an action by Plaintiff, Dilip Daniel, against Defendant, Christiana Care Health System, Inc., to recover compensatory damages and other appropriate relief arising out of the Defendant's unlawful and retaliatory employment practices.

2. Plaintiff's claims for damages against Defendant arise under the Delaware Whistleblower Protection Act ("DWPA"), 19 DE Code §1702- 1708, and under the common law for Wrongful Discharge, and are brought by Plaintiff to redress arbitrary, improper, unlawful, willful, deliberate and intentional retaliation with respect to his compensation, terms, conditions and privileges of employment by Defendant.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332, on the basis of diversity citizenship between the parties. The amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

4. Venue is proper in this District under 28 U.S.C. §1391, in that the Plaintiff and Defendant entered into an employment relationship within the District of Delaware, and the Defendant regularly transacts business therein.

## III. PARTIES

5. Plaintiff, Dilip Daniel, is an individual and citizen of the Commonwealth of Pennsylvania who resides therein at 107 Cliffwood Road, Philadelphia, Pennsylvania.

6. Defendant, Christiana Care Health System, Inc. was and is now a corporation duly organized and existing under the laws of the State of Delaware with a place of business located 501 West 14th Street, PO Box 1668, Wilmington, Delaware.

7. At all times relevant hereto, Defendant was acting through its agents, servants and employees, who were authorized and acting within the scope of their authority, course of their employment and under the direct control of Defendant.

## IV. STATEMENT OF CLAIMS

8. Plaintiff was employed by Defendant from August, 2017 until on or about May 20, 2022, when he was constructively terminated as a result of the unlawful employment practices complained of herein.

9. During the course of his employment, Plaintiff held the position of Pharmacist and was assigned to work the evening shift at Wilmington Hospital, one of Defendant's medical facilities. In that capacity, Plaintiff performed his job functions in a dutiful and competent manner.

10. At the time of his constructive termination, Plaintiff was earning a salary of approximately $141,000.00 per annum, plus benefits.

11. At the end of March, 2019, Plaintiff suspected that narcotic medications were being unlawfully diverted by a certain Pharmacy Technician and brough these concerns to the attention of Katie Gulick ("Gulick"), Pharmacy Supervisor, shortly thereafter.

12. Plaintiff indicated to Gulick that the said Pharmacy Technician was making suspicious errors, working erratic hours, was insubordinate towards him, and was not announcing when he was coming and leaving the pharmacy.

13. Upon information and belief, Gulick reported Plaintiff's concerns to Sam Wetherill, Vice President of Pharmacy ("Wetherill").

14. Thereafter, in August, 2019, Wetherill summoned Plaintiff to a meeting during which he proceeded to scream at him and berate his performance as a Pharmacist. Wetherill blamed Plaintiff for the issues concerning the said Pharmacy Technician's performance and chastised Plaintiff for having sent him emails regarding pharmacy regulations.

15. As a result of Wetherill's response to his complaint, Plaintiff registered a complaint concerning the said Pharmacy Technician with the Delaware Board of Pharmacy on November 4, 2019.

16. In addition to his concerns of possible drug diversion, Plaintiff registered other complaints concerning Defendant's lack of proper record keeping with controlled substance activity on automated dispensing cabinets, the fact that controlled substances were insecurely tubed by Defendant to nursing floors, Defendant's use of pre-signed DEA 222 forms, Defendant's lack of or infrequent monitoring of narcotic discrepancies, and that controlled substances were being delivered by Defendant from Christiana Care Health System, Inc. and then stored in unsecured patient medication bins.

17. In or around April 2020, a bottle of methadone was identified by Plaintiff as missing from the Wilmington Hospital Pharmacy. The methadone was ultimately found under a pile of IV bags.

18. On April 23, 2020, Plaintiff was informed by two other Technicians that there was video footage of a third Technician, the one previously suspected of diversion by Plaintiff, having placed a bottle of methadone in the location where it was found.

19. The two Technicians also informed a Supervisor, Dr. Marko Cichanowsky, of the video footage of said Technician attempting to divert methadone.

20. Upon receiving this report form the Technicians, Plaintiff immediately went to Wilmington Hospital's Security Department to review the video footage.

21. After his review, Plaintiff called Dr. Cichanowsky, and asked that he also review the video footage so that the matter could be addressed immediately.

22. Dr. Cichanowsky responded to Plaintiff: "I can't do that Dilip", and asked: "Do you know what [Weatherill] is going to do when he finds out that you were viewing the video?"

23. As a result of Dr. Cichanowsky's response, Plaintiff reported the occurrence directly to Wilmington Hospital's Security Department.

24. Plaintiff also contacted Wilmington Hospital's Human Resources Department to report the occurrence of suspected methadone diversion.

25. To the best of Plaintiff's knowledge, neither the Security Department nor Defendant's Human Resources addressed his complaint.

26. Because Plaintiff had not received any response to his Internal reports to Defendant, and out of concern for both patient safety and his own medical license under which the suspected Pharmacy Technician worked, Plaintiff filed another complaint with the Delaware Board of Pharmacy on April 23, 2020.

27. In his Complaint, Plaintiff indicated that a dose of methadone for a certain patient went missing at Wilmington Hospital, and that the medication was filled by the said Pharmacy Technician whom Plaintiff previously accused of drug diversion. Plaintiff also indicated that video footage existed which showed the Technician placing the dose underneath IV bags in the pass-through area.

28. Plaintiff also indicated his concerns that Defendant's management would not take action to investigate the matter, and that his complaint would place his job in jeopardy.

29. The Delaware Board of Pharmacy referred the matter concerning Plaintiff's complaint to the Delaware Drug Diversion Unit, who subsequently contacted Wilmington Hospital regarding the attempted diversion.

30. At or about that time, Defendant's management, and in particular Weatherill, also became aware of Plaintiff's external complaints regarding

Defendant's controlled substances practices and his suspicions concerning diversion by the said Pharmacy Technician.

31. It was not until the middle of May, 2020, that the Pharmacy Technician who was suspected by Plaintiff to have diverted narcotics, was terminated by Defendant.

32. On June 6, 2020, to his shock and dismay, Plaintiff was issued a disciplinary action which indicated that "in order to demonstrate his or her commitment to the success of [Wilmington Hospital's] mission" he was expected to alert members of his "chain of command" when issues needed to be addressed. Plaintiff was cited for other baseless performance issues as well, when none had previously brought to his attention.

33. Although Plaintiff was asked to sign the document, he refused due to the fact that he did in fact alert his chain of command of the attempted diversion but was rebuffed.

34. In addition to the retaliatory write-up Plaintiff received on June 6, 2020, which failed to address the fact that Plaintiff's internal complaints were ignored, Plaintiff subsequently suffered a pattern and practice of retaliatory conduct by his supervisors for having registered both internal and external complaints regarding methadone diversion and poor medical practices, as aforesaid.

34. In connection thereto, Plaintiff was issued additional unfounded and unsubstantiated write-ups which threatened his employment and career advancement, was restricted in his practice of pharmacy by being forced to work with technicians he was legally responsible for but not permitted to actively supervise, had his license endangered by failing to promptly address his concerns regarding the methadone diversion event and other improper medical practices, turned technicians against him to the point of him being physically threatened and attacked, purposefully placed him in potentially dangers situations which compromised patient safety by removing necessary support staff, and made him work as a technician, a position that was subordinate to his then current position as a Pharmacist.

35. By way of further example, each time Plaintiff advised a supervisor about a concern regarding a technician, or the harassment he was experiencing, he was ignored and the circumstances were misrepresented by Defendant so as to place blame with Plaintiff.

36. As a direct result of Defendant's failure to address the underlying issues with the technicians' performance, these occurrences jeopardized patient safety.

37. By way of further example, in January 2021, Wilmington Hospital posted an open position for a Day/Evening Pharmacist. Plaintiff, who currently held the position of Night Pharmacist, applied for the role.

38. On January 13, 2021, although Plaintiff he was awarded the position and despite the immediate need to fill this role, Plaintiff's Supervisors delayed his transition.

39. On another occasion, Plaintiff was asked by another Pharmacist to pull narcotics for the entire hospital without a witness during a night shift.

40. Not only was this contrary to hospital policy, but placed Plaintiff's license in jeopardy.

41. When Plaintiff asked his supervisors for guidance regarding the request, one supervisor ignored him and the other provided only a vague response.

42. As a licensed Pharmacist, Plaintiff is required pursuant to Delaware law to report inappropriate and potentially illegal behaviors to the State.

43. Plaintiff registered several complaints with Defendant that he was being subjected to harassment and retaliation for having registered complaints with the Delaware Board of Pharmacy.

44. Notwithstanding his complaints, Defendant failed to take any proper remedial action and the harassment of Plaintiff continued.

45. Defendant's actions in retaliating against Plaintiff in the aforesaid manner for having reported illegal actions to the Delaware Board of Pharmacy aforesaid, created a hostile working environment for Plaintiff.

46. As a result, From January to May, 2022, Plaintiff was forced to take a medical leave of absence due to the aforesaid harassment he was experiencing.

47. Upon his return, Defendant continued to harass and retaliate against Plaintiff by staffing him with another Pharmacist who had several complaints against her, purposely overloading him with work which increased his risk of error, and drastically understaffing his support staff.

48. As a direct result of the harassing and retaliatory practices engaged in by Defendant, as aforesaid, Plaintiff was constructively discharged form his employment on May 20, 2022.

## COUNT I
## DELAWARE WHISTLEBLOWERS PROTECTION ACT

49. Plaintiff incorporates by reference paragraphs 1 through 48 of this Complaint fully set forth at length herein.

50. Under the Delaware Whistleblowers Protection Act, " DWPA ", §1703 an employer "…shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment… (1) Because the employee, or a person acting on behalf of the employee, reports or is about to report to a public body,

verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur..."

51. Under the Act, a "Violation" means an act or omission by an employer, or an agent thereof, that is... materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere.

52. The constructive termination of Plaintiff's employment, as aforesaid, was in violation of the Delaware Whistleblower Protection Act, which prohibits an employer from terminating an employee in retaliation for reporting a serious deviation from standards implemented pursuant to a law, rule, or regulation promulgated under the laws of the State of Delaware.

53. The actions of the Defendant through its agents, servants and employees, in retaliating against Plaintiff in the terms, conditions and privileges of his employment and in constructively terminating Plaintiff's employment, as aforesaid, constituted a violation of the DWPA.

54. Defendant's acts of retaliation, as aforesaid, were intentional, willful and in reckless disregard of Plaintiff's rights and interests.

55. As a direct result of Defendant's willful and unlawful actions in

violation of DWPA, Plaintiff has suffered emotional distress and psychological, humiliation, embarrassment, loss of self-esteem and has sustained a loss of earnings, plus the value of the aforementioned benefits, plus loss of future earning power, plus loss of back pay and front pay and interest due thereon.

## COUNT II
## WRONGFUL DISCHARGE/BREACH OF THE COVENENT OF GOOD FAITH AND FAIR DEALING

56.  Plaintiff incorporates by reference paragraphs 1 through 55 of this Complaint fully set forth at length herein.

57.  The actions of the Defendant through its agents, servants and employees, in constructively terminating Plaintiff's employment in the aforesaid constituted a wrongful discharge.

58.  The Defendant's acts, as aforesaid, were intentional, willful and in reckless disregard of Plaintiff's rights and interests.

59.  As a direct result of Defendant's willful and unlawful actions in wrongfully discharging Plaintiff, he has suffered emotional and psychological distress, humiliation, embarrassment, loss of self-esteem and has sustained a loss of earnings, plus the value of the aforementioned benefits, plus loss of future earning power, plus loss of back pay and front pay and interest due thereon.

## PRAYER FOR RELIEF

60. Plaintiff repeats the allegations of paragraph 1 through 59 of this Complaint as if set forth herein at length.

WHEREFORE, Plaintiff requests this Court to enter judgment in his favor and against Defendant and order that:

(a) Defendant compensate Plaintiff all of its financial losses because of their conduct;

(b) Defendant pay to Plaintiff compensatory damages for financial losses, and other non-pecuniary losses as allowable;

(c) Defendant pay to Plaintiff costs of suit and expert witness fees as allowed by law;

(d) The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

**MCCANN DILLON JAFFE & LAMB, LLC**

By: /s/Timothy A. Dillon, Esq.
Timothy A. Dillon, Esquire (#3824)
300 Delaware Avenue
Suite 805
Wilmington, DE 19801

P:302.888.1221
F:302.888.1332
*Attorney for Plaintiff, Dilip Daniel*